```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
LAURA RUSSO,                                    :
                                                :
                    Plaintiff,                  :
                                                :      **SUMMARY ORDER**
           -against-                             :      09-CV-5334(DLI)(LB)
                                                :
THE NEW YORK AND PRESBYTERIAN                   :
HOSPITAL, NEW YORK HOSPITAL QUEENS and           :
MARK ADKINS, M.D.,                              :
                                                :
                    Defendants.                 :
------------------------------------------------------------------ x
```

**DORA L. IRIZARRY, United States District Judge:**

On December 7, 2009, Plaintiff Laura Russo filed this action against New York and Presbyterian Hospital ("NYPH") and New York Hospital Queens ("NYHQ"), alleging that she was discriminated against on the basis of sex. On May 19, 2010, Plaintiff served Mark Adkins, M.D. with the Second Amended Complaint, which named him as a defendant. The claims against Adkins are for sexual harassment and retaliation in violation of New York State Executive Law and New York City Human Rights Law. Adkins moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against him. For the reasons set forth below, Adkins' motion to dismiss is granted. However, in light of the fact that Plaintiff is granted leave to replead, the dismissal of the complaint is held in abeyance.

## BACKGROUND

In 1994, Plaintiff was hired by the defendants as a Perfusionist, which is a position responsible for supporting the physiological and metabolic needs of the surgical patient so the surgeon can operate. (Compl. ¶¶ 11, 13.) She maintained that position until her termination on May 28, 2008. (Compl. ¶ 12.)

In September 2004, defendant Dr. Mark Adkins was appointed Chairman of Cardiothoracic Surgery at NYHQ. (Compl. ¶ 14.) Plaintiff alleges that Adkins would "brush up against Russo, block her path, and in turn try to force Russo to brush up against him. Additionally, Adkins would block Plaintiff's path" and force her "to be stuck in a position directly in front of him." (Compl. ¶ 17.) Plaintiff further alleges that Adkins would "act in a physically intimidating manner towards women" and "make repeated comments of an underlying sexual nature towards women." (Compl. ¶ 18.) Plaintiff also alleges that, during surgery, Adkins would make derogatory comments about women and breast sizes, and he would play "inappropriate and sexually charged music." (Compl. ¶ 19.)

Plaintiff alleges that, on May 15, 2008, she assisted a procedure performed by Adkins. (Comp. ¶¶ 26-31.) After the procedure was finished, the primary perfusionist told Plaintiff that she was permitted to go home. (Compl ¶¶ 27-42.) Plaintiff left the hospital. (Compl ¶ 42.) Plaintiff alleges that, after she left, there was a complication with the patient, and Adkins wanted Plaintiff to return to the hospital. (Compl. ¶ 46.) Plaintiff alleges that, when she returned to the operating room, "Dr. Adkins verbally attacked the plaintiff, yelling things such as 'Don't you ever fucking do that again.'" (Compl. ¶ 52.) Plaintiff further alleges that Adkins "screamed and yelled at Russo in a vulgar manner" and "cursed approximately twenty (20) times, many of which were directed solely at Ms. Russo." (Compl. ¶ 53.) Plaintiff also alleges that Adkins yelled, in the presence of six colleagues, "Is this your plan? Your fucking plan to get your fucking Chinese boyfriend back here?" (Compl. ¶ 53.)

Plaintiff called the "covering in charge perfusionist" because "the vulgarity and Adkins' demeanor was getting worse." (Compl. ¶¶ 56-57.) Plaintiff claims that she told the in charge perfusionist "that Adkins was screaming, using vulgarity and implying that in some way . . .

Russo had planned this event." (Compl. ¶ 57.) Plaintiff also told the in charge perfusionist that Adkins was "demonstrating 'abusive physician's behavior.'" (Compl. ¶ 57.)

On May 16, 2008, after Plaintiff returned home, William DeBois, Plaintiff's supervisor, called Plaintiff. (Compl. ¶ 71.) Plaintiff informed DeBois that "Adkins had harassed and discriminated against her." (Compl. ¶ 71.) On May 19, 2008, Plaintiff and DeBois continued their discussion, and Plaintiff "requested to have a meeting with DeBois and Adkins, in order to resolve concerns about sexism, language, vulgarity, and harassment that she had been subjected to." (Compl. ¶ 72.) On May 20, 2008, Plaintiff and DeBois spoke, and DeBois informed Plaintiff that "they would all meet the next day." (Compl. 77.) That evening, Plaintiff received a phone call from DeBois, who said that Plaintiff was relieved of all duties effective immediately. (Compl. ¶ 78.)

On May 22, 2008, Plaintiff went to Human Resources at NYP and met with Rachel Bautista, Plaintiff's Human Resources Representative, regarding Plaintiff's "concerns of discrimination and retaliation." (Compl. ¶ 80.) Bautista suggested that Plaintiff "write it all down and give it to her." (Compl. ¶ 82.) On May 22, 2008, Plaintiff provided Bautista with a summary of what happened. (Compl. ¶ 83.) On May 27, 2008, Plaintiff went to Human Resources at NYHQ, where plaintiff met with two individuals who took notes on what Plaintiff said. On May 28, 2008, Plaintiff met with DeBois at NYP and DeBois informed Plaintiff that "he and Human Resources decided to terminate her employment effective immediately." (Compl. ¶ 86.)

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under

3

Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555. On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995).

## DISCUSSION

**1.     RETALIATION**

"Under both the New York State and New York City Human Rights laws, it is unlawful to retaliate against an employee for opposing discriminatory practices." *Harper v. New York City Housing Authority*, 673 F. Supp. 2d 174, 181 (S.D.N.Y. 2009) (citing N.Y. Exec. Law §§ 290 *et seq.*; N.Y. City Admin. Code §§ 8-101 *et seq*). "To state a claim for relief, a plaintiff must allege that '(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4)

there is a causal connection between the protected activity and the adverse action.'" *Id.* (citation omitted).

      a.      **<u>Failure to Allege that Adkins Participated in Plaintiff's Termination</u>**

Adkins argues that the complaint fails to allege that he participated in Plaintiff's termination. The retaliation provision of the NYHRL, New York Executive Law § 296(7), provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." Moreover, New York Executive Law § 296(6) provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." Pursuant to these two provisions, "an individual defendant may be held liable under the NYHRL for actual participation in or aiding and abetting an employer's retaliatory conduct." *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 296-97 (S.D.N.Y. 2004) (citing *Naftchi v. New York Univ.*, 14 F. Supp. 2d 473, 491-92 (S.D.N.Y.1998)); *see also Dantuono v. Davis Vision, Inc.*, 2009 WL 5196151, at *12 (E.D.N.Y. Dec. 29, 2009). "Since § 296 uses virtually identical language to § 8-107 of the NYCHRL, claims under both statutes are subject to the same analysis." *Hubbard v. No Parking Today, Inc.*, 2010 WL 3835034, at *10 (S.D.N.Y. Sept. 22, 2010) (internal quotation marks omitted); *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003).

Here, the complaint alleges that the decision to terminate Plaintiff was made by DeBois and NYPH Human Resources Department. (Compl. ¶ 86 ("Russo met with DeBois at NYP at

5

which time DeBois informed Russo that he and Human Resources decided to terminate her employment effective immediately.").) The complaint fails to allege that Adkins participated or had any involvement in the decision to terminate Plaintiff. Indeed, the complaint does not allege that Adkins had any discussions with Human Resources or DeBois prior to Plaintiff's termination. (*See, e.g.*, Compl. ¶¶ 80-87.) The retaliation claim is therefore dismissed.

  b. <u>**Failure to allege that Plaintiff Participated in a Protected Activity**</u>

Adkins also argues that Plaintiff has failed to allege that she participated in a protected activity because, when Plaintiff complained to NYPH about Adkins, she did not inform them that she believed Adkins was motivated by gender. Plaintiff's own allegations show that, while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her gender. Although a plaintiff is not required to use "legal terms or buzzwords" for his or her complaint to be considered protected activity, the plaintiff must complain of discrimination in "sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, or national origin." *Brummell v. Webster Central School Dist.*, No. 06-CV-6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009). Plaintiff's alleged statements to her employer would not have put them on notice that Plaintiff believed that she was being discriminated against on the basis of gender.

For example, although the complaint alleges that Plaintiff informed her superiors and Human Resources that she experienced harassing behavior, she allegedly told her superiors only that Adkins was "using vulgarity" and was demonstrating "abusive physician's behavior." (Compl. ¶ 57.) The only allegation indicating that Plaintiff possibly sought to inform her employer of harassment on the basis of gender is that Plaintiff requested a meeting with DeBois

and Adkins "in order to resolve concerns about sexism, language, vulgarity and harassment." (Compl. ¶ 72.) However, the complaint does not allege that Plaintiff indeed informed DeBois that she was discriminated on the basis of her gender.

Moreover, the complaint does not specify what Plaintiff told her superiors or Human Resources, nor does she attach to the complaint any of the documents she allegedly provided to Human Resources. Furthermore, upon examination of the events that occurred on May 15, 2008, several days prior to Plaintiff's meeting with Human Resources, it is clear that these events did not involve discrimination on the basis of sex. For example, Adkins' statements regarding Plaintiff "having a boyfriend" and the statements falsely insinuating "that she was having an affair" do not demonstrate discrimination based on gender. *See, e.g.*, *Brant v. County of Dutchess*, 2008 WL 418379, at *5 (S.D.N.Y. Feb. 11, 2008) (statements about an alleged extramarital affair, even if "unpleasant and degrading" were not based on gender); *see also Brown v. Henderson*, 257 F.3d 246, 255 n.3 (2d Cir. 2001) (stating there was "no indication" that "mockery" of plaintiff's alleged affair with a married coworker "was related to her being a woman").

In sum, there is no evidence that Plaintiff engaged in a protected activity. *See, e.g.*, *Consolie v. Wal-Mart Stores, Inc.*, 2009 WL 579422, at *1 (2d Cir. Mar. 4, 2009) (plaintiff's complaints could not "constitute a protected activity, as none of her complaints implicated any conduct that could be considered discrimination on the basis of sex or any other protected class").

Plaintiff argues that she needed only a good faith, reasonable belief that the employment practice was unlawful. Although that is true, Plaintiff must still inform her superiors that she believes the discrimination was on the basis of her sex. If Plaintiff merely had the belief, but did

7

not share that with her superiors, then she did not engage in a protected activity. *See, e.g.*, *Foster v. Humane Society of Rochester and Monroe County, Inc.*, 2010 WL 2867325, at *10 (W.D.N.Y. July 21, 2010) ("In the case at bar, plaintiff does not allege that she engaged in protected activity. Her own allegations, and the documents she relies on, show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex."); *Sullivan v. Chappius*, 2010 WL 1816647, at *7 (W.D.N.Y. 2010) ("The mere insertion by plaintiff's attorney of the legal term of art 'hostile environment' in this claim does not render this a viable cause of action[ under the HRL], where the facts alleged here show no more than that plaintiff complained about matters falling completely outside the scope of the HRL").

Plaintiff also argues that "Adkins does not offer evidence of what Russo said to Human Resources." (Pl. Opp. at 14.) However, Plaintiff is responsible for properly alleging the basis for her claims, and a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

Plaintiff also tries to supplement the complaint and add allegations regarding what she told Human Resources. On a motion to dismiss, however, "a court considers only the allegations made in the complaint and any documents attached thereto, and thus disregards allegations made in a memorandum of law." *Khanukayev v. Times Square Alliance*, 2010 WL 2000552, at *2 n.4 (S.D.N.Y. May 20, 2010) (citations omitted).

Therefore, Plaintiff's retaliation claim is dismissed, without prejudice. However, Plaintiff is granted leave to replead the retaliation claim. The dismissal will be held in abeyance pending the filing of an amended complaint.

## 2. DISCRIMINATION

Adkins argues that the discrimination claim is barred by the statute of limitations. "Discrimination claims under the NYSHRL and NYCHRL are subject to three-year statutes of limitations for filing a complaint." *See* N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d); *see also Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 474 (S.D.N.Y. 2004).

The Complaint was filed on May 19, 2010, and thus, to be timely under the statute of limitations, the plaintiff's claims must have arisen after May 19, 2007. The only event Plaintiff alleges occurred after May 19, 2007 was the May 15, 2008 incident. As noted above, the May 15, 2008 event, as described by Plaintiff in the complaint, did not involve discrimination on the basis of sex. However, in Plaintiff's complaint, she did include several other examples of conduct that could possibly rise to the level of harassment on the basis of sex, although the complaint did not specify the dates on which the events occurred. In light of the fact that Plaintiff will be adding additional information regarding her retaliation claim, Plaintiff is granted leave to replead the discrimination claim so that she can add the relevant dates and any additional information that would support her discrimination claim.[1]

Notably, Plaintiff also contends that Adkins' acts that occurred prior to the statutory time period should also be considered as part of a continuing violation that created a hostile work environment. Because Plaintiff is granted leave to amend the complaint, and additional facts may be alleged by the Plaintiff, the court will not address this argument at this time.

---

[1] The court also notes that, in response to Adkins' motion to dismiss, Plaintiff refers to the complaint Plaintiff filed with the EEOC and refers to the statute of limitations under federal law. However, the claims against Adkins are based only in state and city law. Plaintiff has asserted no federal claims against Adkins. Therefore, the federal statute of limitations is irrelevant.

9

### 3. SUPPLEMENTAL JURISDICTION

Adkins further argues that the court should decline to exercise supplemental jurisdiction over the claims against him. Pursuant to 28 U.S.C. § 1367(a), with few exceptions not relevant here, in any civil action over which the court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Pursuant to 28 U.S.C. § 1367(c), however, a court may decline to exercise supplemental jurisdiction over a state claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Adkins argues that the application of New York Executive law to individuals constitutes a novel state law theory that is improper for federal court resolution because "there is no liability for individuals for sex discrimination under federal law." (Def. Mem. 13.) In *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), the United States Court of Appeals for the Second Circuit held that under the "aiding and abetting" language of New York Executive Law § 296(6), "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NY]HRL." Although New York state courts have not uniformly accepted the Second Circuit's interpretation of state law in *Tomka*, "it is binding upon this Court." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 296-97 (S.D.N.Y. 2004). Moreover, the majority of the other federal district courts in New York considering the issue have elected to follow the lead of

the Second Circuit in *Tomka* and apply its rule of "actual participation" to hold individual defendants personally liable under the NYHRL for discriminatory conduct via § 296(6). *See, e.g.*, *King*, 302 F. Supp. 2d at 296-97; *Perks*, 251 F. Supp. 2d at 1160-61 (citing additional case law). Therefore, Plaintiff's allegations do not raise novel or complex issues of state law.

Moreover, Plaintiff's claims do not substantially predominate over the remaining federal claim against NYPH and NYHQ. Notably, this court has not dismissed all claims over which it has original jurisdiction. Plaintiff's federal claims against NYPH and NYHQ, which arise out of the same facts that form the basis of plaintiff's state law claims against Adkins, have not been dismissed. Therefore, the court finds that the exercise of supplemental jurisdiction is appropriate here. *See, e.g.*, *Patterson v. Xerox Corp.*, 2010 WL 3063070, at *9 (W.D.N.Y. Aug. 2, 2010) ("[T]he exercise of supplemental jurisdiction over the State HRL claims is appropriate since Plaintiff's Title VII claims and the HRL claims are 'so related' within the meaning of Section 1367(a) since both the federal and state claims arise out of the same facts and circumstances."); *Siddiqui v. United Financial Mortg. Corp.*, 2008 WL 2705517, at *2 (W.D.N.Y. July 10, 2008) (exercising supplemental jurisdiction over New York State Human Rights Law claims against an individual because the claims arose out of the same facts as the Title VII claims against the employer); *Selmanovic v. NYSE Group, Inc.*, 2007 WL 4563431, at *8 (S.D.N.Y. Dec. 21, 2007); *King*, 302 F. Supp. 2d at 296-97 ("We will, therefore, decline defendants' invitation and will exercise our supplemental jurisdiction to apply the clearly articulated rule of Tomka to the facts of the present case."); *Velasquez v. Mirv Coffee, Inc.*, 1996 WL 706910 (S.D.N.Y. Dec. 12, 1996).

## CONCLUSION

For the reasons set forth above, Adkins' motion to dismiss is granted, and the claims against him are dismissed without prejudice. However, in light of the fact that Plaintiff is granted leave to replead, the dismissal of the complaint is held in abeyance. Any amended complaint must be filed no later than April 4, 2011. If plaintiff does not file an amended complaint within this time, the claims dismissed herein without prejudice will be deemed to be dismissed with prejudice and a dismissal order will be entered.

SO ORDERED.

Dated: Brooklyn, New York
March 3, 2011

/s/
DORA L. IRIZARRY
United States District Judge